# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**LEXINGTON INSURANCE COMPANY and
KIMCO KISSIMMEE 613, INC.,**

**Plaintiffs,**

-vs-                                    Case No.  6:07-cv-842-Orl-22DAB

**KASH N' KARRY FOOD STORES, INC.; EVEREST
REINSURANCE (BERMUDA), LTD.; INTERESTED
UNDERWRITERS AT LLOYDS, LONDON;   and
AXIS SPECIALTY EUROPE LIMITED,**

**Defendants.**

_____

# ORDER

## I.  INTRODUCTION

This lawsuit principally concerns the question of which of competing insurance companies are primarily responsible to cover a commercial fire loss.  The insurers have filed cross-motions for summary judgment regarding the coverage issue.  Both sides agree the question is susceptible to resolution via summary judgment.  After carefully considering the parties' submissions, the Court determines that the Defendant insurers are primarily responsible to cover the loss.

## II.  BACKGROUND

The facts of this case are undisputed.  In October 2005, a fire occurred at a commercial property owned by Kimco Kissimmee 613, Inc. ("Kimco"), one of the two plaintiffs herein.  At the time of the fire, Defendant Kash 'N Karry Food Stores, Inc. ("Kash 'N Karry"), was leasing

the premises from Kimco.[1]  There was a written lease agreement between Kimco and Kash 'N

Karry.  That document obligated Kash 'N Karry to obtain fire insurance on the subject property.

In that regard, Section 9(a) of the lease provides, in pertinent part:

> Tenant shall cause to be effected upon Landlord's building and
> appurtenances which are part of the demised premises fire
> insurance (including the so-called "Extended Coverage
> Endorsement" and naming as insureds Landlord, Tenant and the
> beneficiary or mortgagee of any first deed of trust or first
> mortgage affecting the demised premises, provided that said
> beneficiary or mortgagee has agreed in writing by an agreement
> in recordable form and in form and content satisfactory to
> Tenant, in Tenant's sole discretion, that the proceeds of such
> insurance shall be made available to Landlord without
> diminution or offset to effect the repair and/or rebuilding
> required pursuant to Section 8(a) hereof), in a company or
> companies licensed to do business in the state in which the
> demised premises are located, in a total amount of not less than
> one hundred percent (100%) of the replacement cost, less
> physical depreciation, of said building and appurtenances.
> Landlord agrees that it shall not assign, transfer or convey to any
> party its rights in or right to receive all or any portion of the
> proceeds of the insurance referred to in the preceding sentence
> without the prior written consent of Tenant.  With respect to any
> insurance effective for a term extending beyond the term of this
> lease, Tenant shall be obligated to pay only such proportion of the
> premium upon such insurance as that portion of the term of the
> policy lapsing prior to the expiration of the term of this lease
> bears to the entire term of the policy.

Presumably pursuant to this contractual provision, Kash 'N Karry obtained a fire

insurance policy from Co-Defendants Interested Underwriters at Lloyds, London; Everest

Reinsurance (Bermuda) LTD; and Axis Specialty Europe Limited (collectively,

"Underwriters").  Although the lease provision quoted above did not require the landlord to

---

[1]In turn, Kash 'N Karry was sub-leasing the premises to another company.

obtain fire insurance coverage, Kimco also had a "blanket" insurance policy, issued by Co-Plaintiff Lexington Insurance Company ("Lexington"), covering a number of properties Kimco owned, including this one.  It is undisputed that both policies cover the fire loss; the point of disagreement is which policy is primary and which is excess.

Both policies contain an "other insurance" provision.  Section E, Paragraph 7(a) of the Underwriters policy states, "If there is any other insurance that would apply in the absence of this Policy, this Policy will apply only after such insurance whether collectible or not."  Paragraph 35 of the Lexington policy provides:

> Except as referred to in Clause 32, 33 and 34, if any property included in the terms of this policy shall, at the time of any loss, be more specifically insured with insurance purchased by the Insured, this policy shall extend to insure such property only so far as related to any excess of insured values not covered by such other insurance, and this policy shall be liable on such specifically insured property only for such loss as shall be in excess of the amount payable by or recoverable from such more specific insurance.

Following the fire, Kimco tendered the fire loss claim to Kash 'N Karry for submission to Kash 'N Karry's insurer, Underwriters.  However, Underwriters refused to pay the claim.  Accordingly, Kimco submitted the claim to its own insurer, Lexington.  Lexington then adjusted and paid the claim.[2]

Based on their position that Underwriters should have satisfied the fire loss claim, Lexington and Kimco filed the present lawsuit against Kash 'N Karry and Underwriters.  Lexington, seeking to recover the money it paid as a result of the fire loss and the ensuing

---

[2]The Second Amended Complaint alleges that Lexington "made payments in the amount of $4,391,751.45." Doc. No. 12, ¶ 14.

insurance claim, asserts claims of equitable indemnity, equitable subrogation, or, in the alternative, pro-rata contribution.  Kimco seeks to recover its insurance deductible on a breach of contract theory.   In response, the Underwriters answered and counterclaimed against Lexington for a declaratory judgment regarding the coverage priority issue.[3]

The essence of Lexington's position is that because the lease required the tenant to obtain fire insurance for the premises, the insurance policy that Kash 'N Karry procured from Underwriters is primarily responsible for the loss.  Alternatively, Lexington contend the fire loss should be split on a pro-rata basis because the competing "other insurance" clauses negate each other.

The Underwriters' counter-position is that the "other insurance" provisions are not mutually repugnant.  The Underwriters maintain the language of the two clauses compels the conclusion that the Lexington policy is primary and the Underwriters policy is excess.  Alternatively, if the Court rejects that argument and determines the "other insurance" policies do negate each other under Florida law, the Underwriters maintain the fire loss should be allocated on a pro-rata basis.  Central to this argument is the Underwriters' position that the lease term requiring Kash 'N Karry to secure fire insurance does not expressly state that the tenant's policy is to be primary.  For that reason, Underwriters maintains that "[i]t is unreasonable, . . . given the plain language of the lease, to conclude, as Lexington does, that the lease sets forth a requirement of primacy for the policy issued by [Underwriters]."  Doc. No. 34 at 9.

---

[3]Kash 'N Karry answered separately.

-4-

# III. ANALYSIS

In the Court's view, this is a simple case.  The Court agrees with Lexington; the lease does evidences an intention that the fire insurance policy obtained by the tenant (Kash 'N Karry) is to be primarily responsible to cover any fire loss.  Unquestionably, the very purpose of including a provision in the lease specifying that the tenant is required to obtain fire insurance coverage for the premises is to shift the duty and responsibility for protecting against such a loss to the tenant and the tenant's insurer.  In contrast, the lease imposed no obligation whatsoever on the landlord to insure the premises against fire.  In fact, it was merely fortuitous (albeit a prudent business practice) that the landlord (Kimco) elected a belt-and-suspenders approach and arranged for its own fire coverage via a blanket policy.  Clearly, under these circumstances, Kimco's insurance must be considered secondary.  To conclude otherwise would penalize Kimco for exercising caution by arranging for fall-back insurance protection in the event there proved to be a problem with coverage under the tenant's policy.  Accordingly, as a matter of contract interpretation, the Court determines that the Underwriters policy is primary and the Lexington policy is excess.[4]  To conclude otherwise would contravene customary and commonly-understood commercial dealings.  Perhaps more importantly, a contrary ruling

_____

[4]This conclusion is reinforced by language in the lease's insurance clause specifying that the owner's construction policy must expressly provide that the tenant's insurance shall be excess.  In that regard, Section 9(a) of the lease states:

> Landlord agrees that it shall obtain at Landlord's expense a "course of construction policy" covering the building and appurtenances to be occupied by Tenant on the demised premises, that Landlord, Landlord's contractor, and Tenant shall be named as insureds in such policy and further agrees to provide Tenant with certificates of such insurance.  *Landlord agrees that any "course of construction" policy obtained shall provide that any insurance carried by Tenant shall be excess of said "course of construction" insurance* and shall not contribute to payment of any loss thereunder.

(emphasis added).  The absence of any such language regarding fire insurance suggests that the tenant's fire insurance policy was intended to be primary.

would simply defy common sense.  In light of this conclusion, the Court need not consider the "other insurance" clauses in the competing policies.

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED as follows:

1.  Plaintiff/Counter-Defendant Lexington Insurance Company's Motion for Summary Judgment on Counter-Petitioner's Counterclaim (Doc. No. 15), filed on September 10, 2007, is GRANTED.

2.  Defendant/Counter-Claimant Interested Underwriters at Lloyds, London; Everest Reinsurance (Bermuda) LTD; and Axis Specialty Europe Limited's Cross-Motion for Summary Judgment (Doc. No. 35), filed on October 15, 2007, is DENIED.

3.  A final judgment embodying these rulings will be entered at the conclusion of the case.

4.  Lexington's summary judgment motion recites that the coverage issue now resolved by this Order "is also the central focus of Plaintiffs' Complaint[,] and a determination of this legal issue will be helpful in resolving the entire matter."  Doc. No. 15 at 4 n.1.  Given that representation, on or before February 25, 2008, the parties shall notify the Court in writing whether this ruling has enabled them to resolve the entire case or whether, instead, further proceedings are necessary.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 15, 2008.

Copies furnished to:

Counsel of Record
Unrepresented Party

ANNE C. CONWAY
United States District Judge